**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**

**PATRICIA KENNEDY**,

Plaintiff,

v. Case No: 6:17-cv-640-RBD-KRS

**KSK INVESTMENTS, LLC.,**
**and H.J. FLORIDA, INC.,**

Defendants,
______________________________/

**PLAINTIFF'S VERIFIED APPLICATION FOR ATTORNEY'S FEES, COSTS, EXPERT WITNESS FEES AND LITIGATION EXPENSES AND MEMORANDUM OF LAW**

Plaintiffs, Patricia Kennedy, by and through her undersigned counsel, and pursuant to this Court's order [D.E. 17], moves this Court for an award of attorney's fees, costs, expert witness fees, and litigation expenses against Defendants. In support of this Motion would show the Court as follows.

## I. SUMMARY CASE STATEMENT

This is an action for injunctive relief and attorneys' fees and costs pursuant to 42 U.S.C. §12181, *et seq*. ("Americans With Disabilities Act" or "ADA"). On August 30, 2017, this Court granted the parties' Motion for Entry of Consent Decree [D.E.17]. That order required the Defendant to bring the property into compliance with the ADA and reserved jurisdiction to enforce compliance and to determine the amount of attorney's fees and costs to which the

Plaintiff was entitled.

The Plaintiff now requests an award of attorney's fees, costs, and expenses. Pursuant to Local Rule 7.3 (a)(8).

## II. A PREVAILING PLAINTIFF IS ENTITLED TO RECOVER HIS ATTORNEY FEES, COSTS, LITIGATION EXPENSES AND EXPERT FEES

Based on this Court's order [D.E. 17], the Plaintiff is the prevailing party under *Buckhannon Bd. & Care Home, Inc. v. W.Va. Dep't of Health & Human Res.,* 532 U.S. 598 (2001). Both for that reason, and under 42 U.S.C. 12205, the Plaintiff is entitled to recover her Attorneys' fees, expert fees, litigation expenses and costs.

### A. Calculating Attorneys Fees

In a civil rights case, the amount of an award of attorneys fees is calculated by determining the reasonable hourly rate for the legal services involved and multiplying that rate by the number of hours reasonably expended. *See, Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). Factors to be considered when setting a fee include: (A) the amount involved and the results obtained; (B) the time and labor required; ( C) the novelty and difficulty of the issues; (D) the skill required to perform the legal services properly; (E) the preclusion of other employment; (F) the customary fee; (G) whether the fee is fixed or contingent; (H) the time limitations imposed by the client or circumstances; (I) the experience, reputation and ability of the attorneys; (J) the undesirability of the case; (K) the nature and length of the professional relationship with the client; and (L) awards in similar cases. *Hensley, supra*, p. 429-430, *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-719 (5th Cir. 1974).

**1. The Results Obtained – a Final Judgment Compelling Compliance With the ADA.**

Civil rights laws in general depend heavily upon private enforcement. *Hensley v. Eckerhart*, 461 U.S. 424, 445(1983). Where the ADA is concerned, "private enforcement suits are the primary method of obtaining compliance with the Act," *D'Lil v. Best Western Encina Lodge & Suites*, 538 F. 3d 1031, 1036 (9th Cir 2008); *Doran, v. 7-Eleven, Inc.*, 524 F.3d at 1041(same). Because of the importance of the federal rights private enforcement actions vindicate, such actions are, as the Supreme Court noted, "private in form only." *Guardian Ass'n v. Civil Service Comm'n*, 463 U.S. 582 (1983). In *Villano v. Boynton Beach*, 254 F.3d 1302, 1306 (11th Cir. 2001) the Eleventh Circuit held that "successful civil rights actions vindicate a public interest ...[and] [p]ublic benefit is a distinct measure of success in civil rights actions and ... a court must account for that distinct measure of success when calculating an award of fees and costs."

The consent decree, signed by the Defendant, identifies a laundry list of violations that existed at the property. As the result of this lawsuit, the Plaintiff obtained significant beneficial results which substantially increase the accessibility of Defendant's facility to wheelchair disabled individuals.[1]

**2. The Experience, Reputation. and Ability of the Attorneys.**

Plaintiff's attorneys have significant litigation experience in both Federal and

[1] This is a suit for injunctive relief and no monetary damages are sought. Therefore, the "amount involved" is inapplicable as a factor in this action.

State Court and have significant experience in civil rights cases, including ADA Title III litigation.

Thomas Bacon has over twenty (20) years of experience as a trial attorney. He was admitted to practice in Florida in 1998 and in Pennsylvania the same year. In 2008, he was admitted to practice in the State of Georgia. He is admitted to practice before United States District Court for the Southern District of Florida; the United States District Court for the Northern District of Illinois; the United States District Court for the Western District of Texas; the United States District Court for the Western District of Pennsylvania; the Eleventh Circuit Court of Appeals; and the Sixth Circuit Court of Appeals. Mr. Bacon concentrates his practice in representing disabled plaintiffs in A.D.A. cases and has handled literally hundreds of actions seeking to address ADA violations. His resume accompanies this Motion and is identified as Exhibit "A."

Philip Michael Cullen, III, has been practicing for over thirty years. He is admitted to the Bar in both Florida and Pennsylvania. He is also admitted to practice before the United States District Court for the Southern District of Florida, the United States District Court for the Middle District of Florida, the United States Court of Appeals for the Eleventh Circuit, and the United States Supreme Court. Mr. Cullen has handled numerous civil rights cases over the years including employment discrimination cases. He has been counsel of record in over two hundred A.D.A. cases throughout the state and was primarily responsible for representing the Plaintiff in this case. His resume accompanies this motion as Exhibit "B."

**3. The Time and Labor Required.**

Appended to this motion and identified as Exhibit "C," is a copy of the time

records of Plaintiff's counsel documenting the time and effort was required to obtain the resolution of this case. In addition, the time expended by Plaintiff's counsel in drafting this motion is included. In general, time incurred by Plaintiff's counsel in filing, preparing and litigating this fee application and any fee hearings thereon is compensable. *See Martin v. University of South Alabama*, 911 F.2d 604, 610 (11th Cir. 1990); *Guerrero v. Commings*, 70 F.3d 1111 (9th Cir. 1995); *Davis v. City and County Of San Francisco*, 976 F.2d 1536, 1544 (9th Cir. 1992); *Valley Disposal, Inc. v. Central Vermont Solid Waste Mgmt. Dist.*, 71 F.3d 1053 (2nd Cir. 1995); *Barlow-Gresham Union High School District No. 2 v. Mitchell*, 940 F.2d 80 (9th Cir. 1991); *Lund v. Affleck*, 587 F.2d 75 (1st Cir. 1978); *Gagne v. Maher*, 594 F.2d 336 (1979); *Johnson v. State of Mississippi*, 606 F.2d 635 (5th Cir. 1979); *Bagby v. Beal*, 606 F.2d 411 (3d Cir. 1979); *Prandini v. National Tea Company*, 585 F.2d 47 (3d Cir. 1978).

As set forth in Exhibit "C," Plaintiffs' counsel spent 19.1 hours working on this case. In addition, there were 2.1 hours of paralegal time involved. This time was reasonable and necessary to bring this matter to conclusion with the beneficial results obtained.

**4. The Novelty And Difficulty Of The Questions Presented And The Skill Requisite To Perform The Legal Service Properly**

It is estimated that there are very few firms nationwide that litigate Title III ADA claims. Effective representation of plaintiffs in ADA actions requires not only sophisticated general litigation skills, such as familiarity with the rules of evidence and procedure, but, in addition, presents numerous issues regarding entitlement to injunctive relief, Article III standing, barriers to access, undue burden, exemptions, new construction and alterations versus pre-ADA construction, extensive knowledge of the ADAAGs (relevant ADA accessibility guidelines), the Technical Assistance Manual and a multitude of other guides issued by the Department of

Justice, the extensive body of case law issued by the courts nationwide, and finally whether remedial measures are "readily achievable." In addition, it is not unusual for Plaintiffs attorneys to find themselves opposed by the resources of corporate defendants.

For those reasons, the Plaintiff submits that the novelty and difficulty of the issues presented in ADA actions, and the skill requisite to properly address such issues, justify a higher rate than many other areas of practice.

**5. The Preclusion Of Other Employment Due To Acceptance Of The Case And The Undesirability Of The Case**

As noted above, the United States Supreme Court, has recognized that civil rights advocates as "private attorney generals." *See e.g., Hensley*, 461 U.S. at 445. The primary, and perhaps singular, reason public places are beginning to comply with the 20 plus year old obligations of the ADA is because of private enforcement suits. *See*, *Antoninetti v. Chipotle Mexican Grill, Inc.*, 613 F. 3d 971, 980 (9th Cir 2010), *cert. denied, Chipotle Mexican Grill, Inc., v. Antoninetti,* ___ U.S. ___, 2011 WL 645276 (79 USLW 3514, April 18, 2011). That notwithstanding, the efforts of Individuals such as the Plaintiffs and the attorneys who represent the disabled are "not pleasantly received," *Johnson v. Georgia Highway Exp., Inc.* , 488 F.2d 714, 719 (5th Cir. 1974). Another court was far more blunt in describing the reaction as one of "vitriolic hostility." *Mallory v. Harkness,* 923 F.Supp. 1546, 1555 (S.D. Fla. 1996).

Because of the negative publicity and attitude that many have toward Title III ADA actions, Plaintiff's counsel are predictably precluded from other employment based on acceptance of the case. For instance, it is highly unlikely that a Plaintiff's lawyer would attract business clientele. It has been recognized that civil rights plaintiffs' work is oftentimes undesirable, and that plaintiffs' attorneys are economically impacted by their decision to help the

civil rights litigant. As explained in *Johnson v. Georgia Highway Exp., Inc.* , 488 F.2d 714, 719 (5th Cir. 1974):

> "Civil rights attorneys face hardships in their communities because of their desire to help the civil rights litigant.... Oftentimes his decision to help eradicate discrimination is not pleasantly received by the community or his contemporaries. This can have an economic impact on his practice which can be considered by the Court."

Additionally, in the instant case, the Plaintiff's rights, and those of all wheelchair bound individuals, were vindicated by counsel working on a contingent fee basis. This time, spent on a contingency basis, could have been spent on other matters.

**6. The Reasonable Hourly Rate, the Customary Fee And Fees Awarded In Similar Cases**

A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonable, comparable skills, experience and reputation. *See, Marisol A. v. Giuliani*, 111 F. Supp.2d 381 (S.D.N.Y.2000). The relevant community to which the Court should look is the District in which the case was brought. *Patrolmen's Benevolent Assn of the City of New York, Inc. v. The City of New York*, 2003 WL 21782675 (S.D.N.Y. 2003); *AR v. New York City Department of Education*, 407 F.3d 65 (2d Cir 2005); *Access 4 All, Inc. v. Park Lane Hotel, Inc.*, 2005 WL 3338555 (S.D.N.Y. 2005

In determining the reasonableness of the fees and hourly rate, it is appropriate to consider rates awarded in other cases. Because the attorney compensation is based on contingency, and payment has not been made, courts award the current prevailing market rate. The current market rate is the rate at the time of the Fee Petition, not the rate at the time the services were performed. This takes into account the delay in payment. *Lanni v. State of New*

*Jersey*, 259 F.3d 146, 149-50 (3d Cir. 2001). Additionally, in considering the rates awarded in prior cases, courts adjust rates upward to account for inflation. It is especially important in this case, which has been in litigation for months, without the Plaintiffs' counsel having received any payment to date.

In *Houston v. South Bay Investors, etc.,* case number 9:13-cv-80193-DTKH (S.D. Fla.), the Court determined that $420.00 per hour was a reasonable fee for the undersigned [D.E. 12]; *Access for the Disabled, etc., et. al., v. EDZ, Inc*., case no: 8:12-cv-2186-EAJ (M.D.Fla.) (same)[D.E. 85]. Also, *Houston v. Arshak Corp*., case no: 0:13-cv-60752-RNS (S.D. Fla 2103)($420.00 per hour awarded to attorney with nineteen years' experience). In *Access 4 All, Inc., v. The TJX Companies, Inc*., case no: 9:11-cv-80109 (S.D. Fla.), counsel for the defendant represented to the Court that $450.00 per hour was the rate for "senior" attorneys. [D.E. 30, at 11-12]. Particularly in view of the statements in the latter two cases, and the fact that the Plaintiffs were represented on a contingent fee basis, $420.00 per hour for the services of the Plaintiffs' counsel is low.

Courts in other jurisdictions have also approved rates as high as $430 per hour in similar types of litigation. For example, in *Rodriguez v. McLoughlin*, 84 F.Supp.2d 417 (S.D.N.Y. 1999), the Court awarded the supervising attorney in a civil rights action $425 per hour. In *Gonzalez v. Bratton*, 147 F. Supp. 2d 180, 211-12 (S.D.N.Y. 2001), the court approved rates up to $390 an hour for senior attorneys in a civil rights case. Also, *New York State NOW v. Pataki*, 2003 WL 2006608, at 2 (S.D.N.Y. Apr 30, 2003)(approving a rate of $430 an hour for a small civil rights litigator).

The Plaintiff here is seeking $420 per hour for attorney's time. In addition, the

Plaintiffs seek paralegal fees at the rate of $115 per hour, *see, Golf Clubs Away, LLC., v. Hosting Corp.*, case no: 0:11-cv-62326-RNS [D.E. 29] approving a paralegal rate of $125.00 per hour.

**7. Whether The Fee is Fixed or Contingent**

The fee in the instant action is contingent. In fact, Plaintiff's counsel has incurred significant expenses. Moreover, there is no certainty that Plaintiff's counsel will receive any compensation at all. Therefore, in setting a reasonable hourly rate, Plaintiff submits that this Court should award the higher range of rates to account for the length of time and uncertainty that counsel would be paid at all.

**8. The Time Limitations Imposed by the Client or Circumstances**

Because the barriers to access complained of by Plaintiff restricted and/or limited Plaintiff's access to the subject Facility, time was of the essence. Every day that passed while the undersigned did not work on the case and make every effort to expedite its resolution, by pursuing litigation, was another day that the Facility would remain inaccessible.

**9. The Nature and Length of the Professional Relationship with the Client**

Thomas Bacon, P.A. has represented the Plaintiff in several other actions, and has a continuing relationship with the client. This has led to increased efficiency in the prosecution of this litigation.

**III. _EXPERT FEES, COSTS AND LITIGATION EXPENSES**

**A. Costs**

A prevailing party is entitled to costs pursuant to Rule 54(d) of the Federal Rules of Civil Procedure. These costs are defined by 28 U.S.C. § 1920, which provides for recovery of,

*inter alia*, (1) fees of the Clerk and process server; (2) court reporter fees “for all or any part of the stenographic transcript obtained for use in the case”; (3) fees for printing and witnesses; (4) fees “for exemplification and copies of papers necessarily obtained for use in the case”; and (5) docket fees. Additionally, in civil rights actions, a prevailing party may recover expenses not normally available under § 1920. *See Dowdell v. City of Apopka*, 698 F. 2d 1181, 1189-92 (11th Cir 1983). Such additional expenses cover “with the exception of routine overhead, normally absorbed by the practicing attorney, all reasonable expenses incurred in case preparation, during the course of litigation, or as an aspect of the settlement of the case.” *Id* at 1192. *Dowdell* reversed the lower court for its refusal to tax travel, telephone and postage expenses as costs.

In *Davis v. Mason County,* 927 F. 2d 1473, 1488 (9th Cir. 1991), the Ninth Circuit discussed the recovery of travel expenses under 42 USC 1988,

> “ Mason County fails to see that like the expert witness fees, the travel expenses were not granted as costs under section 1920, but rather as out-of-court expenses compensable under section 1988. Courts have generally held that expenses incurred during the course of litigation which are normally billed to fee-paying clients should be taxed under section 1988. *Dowdell*, *supra* at 1190, *Palmigano v. Garraby*, 707 F. 2d 636,637 (1st cir 1983); *Northcross v. Board of Education*, 611 F. 2d 624, 639 (6th Cir. 1979); cert. denied, 447 U.S. 911 (1980). As the Eleventh Circuit said in *Dowdell:*
>
> “ Reasonable attorney’s fees’ under the (Attorney’s Fee Awards) Act must include reasonable expenses because attorney’s fees and expenses are inseparably intertwined as equally vital components of the cost of litigation. The factually complex and protracted nature of civil rights litigation frequently makes it necessary to make sizeable out -of- pocket expenses which maybe essential to success as the intellectual skills of the attorneys. If these costs are not taxable, and the client, as is often the case, cannot afford to pay for them, they must be borne by counsel, reducing the fees award accordingly. Thus, following the reasoning adopted in upholding the award of expert witness fees, we also affirm the district courts award of travel expenses pursuant to section 1998.”

Those expenses are fully itemized in Exhibit “C.”

The proposed $1,000.00 reinspection fee is for the reinspection contemplated

after the Defendant completes the repairs of the existing barriers to access, to confirm that the ADA violations have been corrected. Reinspection fees have been awarded in civil rights cases in order to monitor compliance with the court order. *See*, *Access For America, Inc. v. Oakwood Center, L.C.*, Case No. 8:02-civ-464-T-30MSS (M.D. Fla. 2003); *Access For America, Inc. v. Fram Fed Four, Inc.* Case No. 02-60605-civ-Lenard/Simonton, at p. 14 (S.D. Fla. 2002); *Access 4 All, Inc. v. Business Consultants International Corp.* Case No. 02-21482-civ-Ungaro-Benages/Brown p. 10 (S.D. Fla. 2002); *Access 4 All, Inc. v. Safari Investments, Inc.* Case No. 01-4795-civ-Jordan/Bandstra, p. 11 (S.D. Fla. 2002).

As set forth above, as itemized in Exhibit "C," the Plaintiff's attorneys' fees, costs and litigation expenses fees are as follows:

(a) To date, the Plaintiff has incurred $ 8,022.00 for attorneys' fees based on an hourly rate of $420.00 per hour for legal services, and paralegal fees of $ 138.00 based on $115 per hour for the paralegal. Plaintiffs' counsel certifies that he has fully reviewed the time records and supporting data and that the motion is well grounded in fact and is justified.

(b) Plaintiffs have further incurred costs and litigation expenses in the total amount of $ 460.00

( c ). Expert expenses in the sum of $ 1,200.00

(d). The re-inspection fee is $ 1,000.00

Thus, Plaintiffs' total attorney fees, costs and litigation expenses are $ 10,815.00.

**IV. CONCLUSION.**

**WHEREFORE**, Plaintiffs respectfully move this Court award them their

attorney's fees, litigation expenses, expert witness fees, and costs as requested above in the amount of $ 10,815.00.

**I HEREBY** that, both during the course of this litigation, the subject of attorney's fees, costs, expert fees, and litigation expenses has been the subject of extended e-mail correspondence. Counsel for the parties have also discussed the issue via telephone. While no resolution was achieved, the Defendant anticipates making a written proposal addressing the issue.

**I FURTHER CERTIFY** that, on September 16, 2017, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will automatically send e-mail notification of such filing to the attorneys of record.

*/s/Philip Michael Cullen, III*
Philip Michael Cullen, III
Fla. Bar No: 167853
Thomas B. Bacon, P.A.
621 South Federal Highway, Suite Four
Fort Lauderdale, Florida 33301
Telephone: (954) 462-0600
Facsimile: (954) 462-1717
e-mail: cullen@thomasbaconlaw.com